**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BED-VILLAGE OAKS, LLC AND** | § | |
| **326 COLONIAL APARTMENT** | § | |
| **COMPLEX, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Civil Action No. 3:17-cv-0553-G** |
| **v.** | § | |
| | § | |
| **SENECA SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| *Defendant*. | | |

**APPENDIX IN SUPPORT OF
DEFENDANT SENECA SPECIALTY INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS RULE 12(b)(1) MOTION TO DISMISS
PLAINTIFF 326 COLONIAL APARTMENT COMPLEX, LLC**

Defendant Seneca Specialty Insurance Company submits this appendix in support of its

Motion to Dismiss Plaintiff 326 Colonial Apartment Complex, LLC. Attached hereto are the

following Documents:

| Exhibit | Title of Document | Appendix Page(s) |
|---|---|---|
| 1 | Affidavit of Stephen Sollecito | 001-002 |
| 2 | Excerpts from Seneca Policy No. SSP1801793 | 003-034 |
| 3 | Proofs of Loss | 035-036 |
| 4 | Reinstatement of and First Amendment to Commercial Earnest Money Contract | 037-061 |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **BED-VILLAGE OAKS, LLC AND** | § | |
| **326 COLONIAL APARTMENT** | § | |
| **COMPLEX, LLC** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | **Civil Action No. 3:17-cv-0553-G** |
| **v.** | § | |
| | § | |
| **SENECA SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| *Defendant.* | | |

### AFFIDAVIT OF STEPHEN SOLLECITO

| | |
|---|---|
| STATE OF NEW YORK | § |
| | § |
| COUNTY OF NEW YORK | § |

BEFORE ME, the undersigned authority, on this day personally appeared Stephen Sollecito who, after first being duly sworn upon his oath, stated as follows:

1.   "My name is Stephen Sollecito.  I am over 18 years of age, of sound mind, and capable of making this affidavit.

2.   I am employed by Seneca Insurance Company as a Property Claims Examiner.  I was the assigned adjuster for the claims submitted by Plaintiff BED-Village Oaks, LLC.

3.   The facts stated in Seneca Specialty Insurance Company's Motion to Dismiss are true and correct.

4.   I am also familiar with Seneca Policy No. SSP 1801793.  The endorsement contained in the Appendix to Seneca's Motion to Dismiss is a true and correct copy of the relevant portions of that policy.  Seneca Policy No. SSP 1801793 is a document maintained in the course of its regularly conducted business activity."

Affiant says nothing further.

_____
STEPHEN SOLLECITO

SUBSCRIBED AND SWORN TO BEFORE ME on April  4th , 2017, to certify which

witness my hand and official seal.

NOTARY PUBLIC
STATE OF NEW YORK

LUIS E. VEGA
Notary Public, State of New York
No. 01VE6045637
Qualified in Nassau County
Commission Expires July 31, 20 18

002



**SENECA SPECIALTY INSURANCE COMPANY**

# COMMERCIAL PROPERTY

HOME OFFICE
2999 NORTH 44th STREET
PHOENIX, AZ 85018-7556

## MAIN ADMINISTRATIVE OFFICE

160 WATER STREET
NEW YORK, NY 10038

*Please be sure to read your policy*

003

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

President

Chief Operating Officer & Secretary

## SENECA INSURANCE COMPANY, INC.
## SENECA SPECIALTY INSURANCE COMPANY

## CLAIMS NOTIFICATION

**For immediate claims service (available 24 hours/day – 7 days a week), you may contact the company as follows:**

**Telephone #:**   **(212) 277- 3490**
                   **(917) 270- 2648**

**Facsimile #:**    **(212) 422-7541   Attention: Claims Department**

**E-Mail:**         **claims@senecainsurance.com**

**In writing, to:**

**Seneca Insurance Company, Inc.**
**Claims Department**
**160 Water Street, 16th Floor**
**New York, New York 10038**

**ATTACH THIS NOTICE TO YOUR POLICY:  This notice is for information only and does not become a part or condition of the attached policy.**

40-075 (04/11)

| | |
|---|---|
| **TEXAS - IMPORTANT NOTICE** | **AVISO IMPORTANTE** |

To obtain information or make a complaint:

Para obtener informacion o para someter una queja:

You may call the company's telephone number for information or to make a complaint at

Usted puede llamar al numero de telefono de la compania para informacion o para someter una queja al

**1-212- 344-3000**

**1-212- 344-3000**

You may write the Company at

Puede escribir

***Seneca Specialty Insurance Company***
***160 Water Street***
***16th Floor***
***New York, NY 10038***

***Seneca Specialty Insurance Company***
***160 Water Street***
***16th Floor***
***New York, NY 10038***

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at

Puede communicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al

**1-800-252-3439**

**1-800-252-3439**

You may write the
Texas Department of Insurance
PO Box 149104
Austin, TX  78714-9104
FAX# (512) 475-1771

Puede escribir al Departamento de Seguros de Texas
PO Box 149104
Austin, TX  78714-9104
FAX# (512) 475-1771

**Web:  http://www.tdi.state.tx.us**

**Web:  http://www.tdi.state.tx.us**

**E-mail:**
**ConsumerProtection@tdi.state.tx.us**

**E-mail:**
**ConsumerProtection@tdi.state.tx.us**

**PREMIUM OR CLAIM DISPUTES:**  Should you have a dispute concerning your premium or about a claim you should contact the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**  Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con la compania primero.  Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**ATTACH THIS NOTICE TO YOUR POLICY:**  This notice is for information only and does not become a part or condition of the attached document.

**UNA ESTE AVISO A SU POLIZA:**  Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

## SENECA INSURANCE COMPANY, INC.

### TEXAS DISCLOSURE NOTICE-
### CLAIMS FILING PERIOD OR CONTRACTUAL LIMITATION-
### ACTION AGAINST US

This notice is for information purposes only and does not alter the terms or conditions of the policy to which it is attached.

This disclosure, as required by the Texas Department of Insurance, highlights the following provisions that are applicable to your policy:

### Claims Filing Period

You are required, under the provisions of this policy, to furnish prompt notice of the loss, which includes a description of the property involved. Any loss caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, must be filed with us not later than one year after the date of loss. You may also file a claim after the first anniversary of the date of the loss for good cause shown by the person filing the claim.

### Contractual Limitation- Action Against Us

With respect to any loss in the State of Texas caused by windstorm or hail in the catastrophe area, as defined by the Texas Insurance Code, no one may bring a legal action against us under this insurance, unless there has been full compliance with all the terms of this insurance, and the action is brought within the earlier of the following:

    A) Two years and one day from the date we accept or reject the claim; or
    B) Three years and one day from the date of loss that is the subject of the claim.

Please contact your agent if you have any questions or concerns regarding this disclosure notice.

44-010 (02-13)

# S**ENECA**

THE

COMPANIES

—— Underwriters with Experience ——

# NOTICE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA
## ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form a part of your insurance contract. No coverage is provided by this Notice, nor can it be construed to replace any provisions of your policy (including its endorsements). If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) shall prevail.

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following endorsement, which applies to your new or renewal policy being issued by us:

### Exclusion of Loss Due To Virus or Bacteria Endorsement

This endorsement makes an explicit statement regarding a risk that is not covered under your policy. It points out that there is no coverage under such insurance for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease. The exclusion in this endorsement applies to all coverages provided by your policy, including (if any) property damage and business income coverages.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# SENECA SPECIALTY INSURANCE COMPANY
## COMMON POLICY DECLARATIONS

| Renewal | |
|---|---|
| **Policy #** | SSP1801793 |
| **Named Insured:** | Behind Every Door, LLC |
| | Bed-Village Oaks, LLC |
| **Mailing Address:** | 14850 Montfort Dr. #100 |
| | Dallas, TX 75254 |

| **Policy Period:** | **From:** | 9/10/2013 | **To:** | 9/10/2014 | **at 12:01 AM, Standard Time** |
|---|---|---|---|---|---|
| | | | | | **at your mailing address shown** |

**Business Description:** Apartments

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| | |
|---|---|
| **Commercial Property Coverage Part** | $69,500 |
| **Commercial Inland Marine Coverage Part** | Not Covered |
| **Terrorism - Mandatory Fire Following Coverage** | Not Covered |
| **Terrorism - Full Certified Coverage** | Not Covered |
| **Total:** | $69,500 |

### Forms and Endorsements Applicable to all Coverage Parts:

| | | | |
|---|---|---|---|
| 40-073 (07/07) | Texas-Important Notice | IL 09 35 (07/02) | Exclusion of Certain Computer-Related Losses |
| 44-010 (02/13) | Texas Disclosure Notice- Claims Filing Period | CP 01 42 (01/11) | Texas Changes |
| | or Contractual Limitation Action Against Us | IL 09 53 (01/08) | Exclusion of Certified Acts of Terrorism |
| PN 400 (07/10) | Exclusion of Loss Due to Virus or Bacteria | SSI 307 (04/13) | Total Fungus, Wet Rot Or Dry Rot Exclusion |
| | Advisory Notice to Policyholders | SSI 309 (04/13) | Exclusion of Loss Due to Virus or Bacteria |
| SSI 318 (04/13) | Heat Condition | ESP 021 (04/97) | Pollution, Contamination & Debris Removal |
| SSI 300 (02/06) | Common Policy Conditions | GEN 301 (04/11) | Minimum Earned Premium-25% |
| SSI 301 (02/06) | Service Of Suit | | |
| CP 10 30 (10/12) | Causes Of Loss - Special Form | | |
| CP 00 10 (10/12) | Building & Personal Property Coverage Form | | |
| CP 10 54 (06/07) | Windstorm Or Hail Exclusion | | |
| GEN 308 (04/11) | Primary Loss Limit Policy-Combination Endorsement | | |

| | | | |
|---|---|---|---|
| **Producer:** | All Risks, Ltd | **Code:** | 18021 |
| **Address:** | 275 Scientific Dr NW #1500 | | |
| **City, State, Zip:** | Norcross, GA 30092 | **Payment Plan:** | Agency Bill |
| | | | 01 |

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

SSI 318 (04/13)

| | | | | | |
|---|---|---|---|---|---|
| **Authorized Representative:** | *J E Stanton* | **Date:** | 10/03/13 | **At:** | New York, NY |
| **Issued By:** | D Stillings | **Date:** | 10/03/13 | | |

Includes copyrighted material of Insurance Services Office, Inc. Copyright, Insurance Services Office, Inc., 1983, 1984.
**SSP 038 (05/97)**

# SENECA SPECIALTY INSURANCE COMPANY
## COMMERCIAL PROPERTY COVERAGE PART
## DECLARATIONS

| | | | |
|---|---|---|---|
| **Policy #:** | SSP1801793 | **Producer:** | All Risks, Ltd |
| **Named Insured:** | Behind Every Door, LLC | **Eff. Date:** | 09/10/13 |

### SCHEDULE OF INSURED LOCATIONS

| Prem. # Bldg. # | Address, City, State, Zip | Construction/ Occupancy | Protection Class |
|---|---|---|---|
| See Schedule Attached | See Schedule Attached | Frame Apartments | NB 4 |

### COVERAGES PROVIDED

| Prem. # Bldg. # | Coverage | Cause Of Loss | Deductible | Valuation | Coinsurance | Limit of Insurance |
|---|---|---|---|---|---|---|
| See Schedule | Building | ISO Special Excluding Wind and Hail | $100,000 Per Occurrence | RC | N/A | See Schedule |
| See Schedule | Personal Property | ISO Special Excluding Wind and Hail | Included | RC | N/A | See Schedule |
| See Schedule | Rental Value | ISO Special Excluding Wind and Hail | 72 Hour Waiting Period | | N/A | See Schedule |

Limit of Insurance          $2,500,000  Primary Per Occurrence

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE
FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc.  Copyright, Insurance Services Office, Inc., 1983, 1984.
**SSP 039 (05/97)**

Policy: SSP1801793
Term: 9/10/2012-2013

## Behind Every Door LLC-Schedule of Coverage and Values

| Loc. No. | Bldg. No. | Location Address | City | State | Zip | Building Values | Personal Property Values | Rental Income Values | Total Values | Type of Construction | OCCUPANCY |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | $ 25,000 | $ 57,336 | $ 619,186 | Frame | Apartments |
| 1 | 2 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 3 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 4 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 5 | 3550 E Overton St | Dallas | TX | 75216 | $ 476,250 | | $ 50,863 | $ 527,113 | Frame | Apartments |
| 1 | 6 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 7 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 8 | 3550 E Overton St | Dallas | TX | 75216 | $ 465,000 | | $ 49,662 | $ 514,662 | Frame | Apartments |
| 1 | 9 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 10 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 11 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 12 | 3550 E Overton St | Dallas | TX | 75216 | $ 555,000 | | $ 59,274 | $ 614,274 | Frame | Apartments |
| 1 | 13 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 14 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 15 | 3550 E Overton St | Dallas | TX | 75216 | $ 591,000 | | $ 63,118 | $ 654,118 | Frame | Apartments |
| 1 | 16 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 17 | 3550 E Overton St | Dallas | TX | 75216 | $ 591,000 | | $ 63,118 | $ 654,118 | Frame | Apartments |
| 1 | 18 | 3550 E Overton St | Dallas | TX | 75216 | $ 591,000 | | $ 63,118 | $ 654,118 | Frame | Apartments |
| 1 | 19 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 20 | 3550 E Overton St | Dallas | TX | 75216 | $ 475,500 | | $ 50,783 | $ 526,283 | Frame | Apartments |
| 1 | 21 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 22 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 23 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 24 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 25 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 26 | 3550 E Overton St | Dallas | TX | 75216 | $ 591,000 | | $ 63,118 | $ 654,118 | Frame | Apartments |
| 1 | 27 | 3550 E Overton St | Dallas | TX | 75216 | $ 591,000 | | $ 63,118 | $ 654,118 | Frame | Apartments |
| 1 | 28 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 29 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 30 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 31 | 3550 E Overton St | Dallas | TX | 75216 | $ 345,000 | | $ 36,846 | $ 381,846 | Frame | Apartments |
| 1 | 32 | 3550 E Overton St | Dallas | TX | 75216 | $ 345,000 | | $ 36,846 | $ 381,846 | Frame | Apartments |
| 1 | 33 | 3550 E Overton St | Dallas | TX | 75216 | $ 592,500 | | $ 63,279 | $ 655,779 | Frame | Apartments |
| 1 | 34 | 3550 E Overton St | Dallas | TX | 75216 | $ 592,500 | | $ 63,279 | $ 655,779 | Frame | Apartments |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 35 | 3550 E Overton St | Dallas | TX | 75216 | $ 592,500 | | $ 63,279 | $ 655,779 | Frame | Apartments |
| 1 | 36 | 3550 E Overton St | Dallas | TX | 75216 | $ 592,500 | | $ 63,279 | $ 655,779 | Frame | Apartments |
| 1 | 37 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 38 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 39 | 3550 E Overton St | Dallas | TX | 75216 | $ 583,500 | | $ 62,318 | $ 645,818 | Frame | Apartments |
| 1 | 40 | 3550 E Overton St | Dallas | TX | 75216 | $ 583,500 | | $ 62,318 | $ 645,818 | Frame | Apartments |
| 1 | 41 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,336 | $ 594,186 | Frame | Apartments |
| 1 | 42 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 43 | 3550 E Overton St | Dallas | TX | 75216 | $ 480,000 | | $ 51,264 | $ 531,264 | Frame | Apartments |
| 1 | 44 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 45 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 46 | 3550 E Overton St | Dallas | TX | 75216 | $ 480,000 | | $ 51,264 | $ 531,264 | Frame | Apartments |
| 1 | 47 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 48 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 49 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 50 | 3550 E Overton St | Dallas | TX | 75216 | $ 589,500 | | $ 62,958 | $ 652,458 | Frame | Apartments |
| 1 | 51 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| 1 | 52 | 3550 E Overton St | Dallas | TX | 75216 | $ 536,850 | | $ 57,335 | $ 594,185 | Frame | Apartments |
| | | TOTALS | | | | $ 27,882,450 | $ 25,000 | $ 2,977,846 | $ 30,885,296 | | |

012



# ENDORSEMENT

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PRIMARY LOSS LIMIT POLICY – COMBINATION ENDORSEMENT

This Endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

BUILDERS RISK COVERAGE FORM

1.  The following is added to the Definitions Section:

    **Definition of Occurrence**

    Occurrence means the total of all losses, damages, or expenses caused by or resulting from a single event of a Covered Cause of Loss or from a combination of Covered Causes of Loss, except for the following causes of loss if covered under this policy:

    **a.** With respect to the Causes of Loss of Tornado, Cyclone, Hurricane, Windstorm or Hail, or Winter/Storm Freeze resulting from a single atmospheric disturbance, occurrence will mean the total of all losses, damages, or expenses that occur within any 72-hour period caused by or resulting from such Covered Causes of Loss.

    **b.** With respect to the Causes of Loss of Riot, Riot Attending a Strike, or Civil Commotion resulting from a single event, occurrence will mean the total of all losses, damages, or expenses that occur within any 72-hour period caused by or resulting from such Covered Causes of Loss.

    In the event of an occurrence as defined above, you may elect the moment at which the 72-hour period will be deemed to have commenced.

2.  The following deletes and replaces the Limits of Insurance Section:

    **Limit of Insurance**

    The most we will pay for loss or damage is the Limit of Insurance for all loss or damage in any one occurrence shown on the Declarations or Schedule.  In no event will we pay more than such Limit of Insurance regardless of the number of locations, coverages or coverage parts involved in the loss or damage.

    Although the premium for this policy is based upon the Statement of Values on file with us or as shown on the Declarations or Schedule, in the event of loss or damage, the most we will pay is the least of the following amounts:

    **a.** The actual adjusted amount of the loss or damage;

    **b.** The scheduled values for each coverage at each location as shown on the latest Statement of Values; or

    **c.** The applicable Limit of Insurance.

3.  The following is added to the Additional Conditions Section:

    **Permission to Buy Excess**

    Permission is granted for you to buy excess insurance over the Limits of Insurance provided by this policy without prejudice.  The existence of such excess insurance will not reduce our liability under this policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

013



# SENECA SPECIALTY INSURANCE COMPANY
## ENDORSEMENT

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COMMON POLICY CONDITIONS

Wherever the Commercial Property Conditions and the Commercial Inland Marine Conditions are referenced in this policy, such reference is changed to the Common Policy Conditions.

All Coverage Parts included in this policy are subject to the following conditions.

**A.  Cancellation**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  30 days before the effective date of cancellation if we cancel for any other reason, unless the State where the property is located requires us to provide another notice period in which case such notice period will apply.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy period will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If you cancel, the refund will be 10% less than pro rata.  The cancellation will be effective even if we have not made of offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.  Valuation**

The following valuation condition applies unless a different valuation condition is applicable in a Coverage Form or endorsement attached to this policy.

The value of property will be the least of the following amounts:

1.  The actual cash value of that property;

2.  The cost of reasonably restoring that property to its condition immediately before loss or damage; or

3.  The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

**C.  Concealment, Misrepresentation or Fraud**

This policy is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1.  The policy;

2.  The Covered Property;

3.  Your interest in the Covered Property; or

4.  A claim under this policy.

---

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# SENECA SPECIALTY INSURANCE COMPANY
## ENDORSEMENT

---

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

---

**D. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance. The breach of any condition of this policy at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**E. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**F. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**G. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**H. Inspections and Surveys**

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

---

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

015

# SENECA SPECIALTY INSURANCE COMPANY
## ENDORSEMENT

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

---

**I.  Legal Action Against Us**

No one may bring a legal action against us under this policy unless:

1. There has been full compliance with all of the terms of this policy; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**J.  No Benefit to Bailee**

No person or organization, other than an insured, having custody of Covered Property will benefit from this insurance.

**K.  Non-renewal**

1. If we decide not to renew this policy, we will mail or deliver written notice of non-renewal to the first Named Insured, at least 30 days before the expiration date, or the anniversary date if this is a policy written for a term of more than one year or with no fixed expiration date.  If the state where the property is located requires us to provide another notice period, then such notice period will apply.

2. Any notice of non-renewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

3. If notice is mailed, proof of mailing will be sufficient proof of notice.

**L.  Other Insurance**

1. You may have other insurance subject to the same or similar plan, terms, conditions and  provisions as the insurance  under this policy.  If you do, we will pay our share of the covered loss or damage.  Our share is the proportion that the applicable Limit of Insurance under this policy bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Insurance.

**M.  Policy Period, Coverage Territory**

Under this policy:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is the United States of America (including its territories and possessions); Puerto Rico; and Canada.

---

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



# SENECA SPECIALTY INSURANCE COMPANY
## ENDORSEMENT

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

---

**N.   Premiums**

The first Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

**O.   Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment.  That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them.  But you may waive your rights against another party in writing:

1.   Prior to a loss to your Covered Property or Covered Income.

2.   After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a.   Someone insured by this insurance; or

    b.   A business firm:

        (1)   Owned or controlled by you; or

        (2)   That owns or controls you.

This will not restrict your insurance,

**P.   Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative.  Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**Q.   Parts**

In the case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**R.   The following are added to Loss Condition, Duties in the Event of Loss or Damage:**

1.   You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

2.   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

**S.   The following is added to Loss Condition, Loss Payment:**

We will not be liable for any part of a loss that has been paid or made good by others.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# SENECA SPECIALTY INSURANCE COMPANY
## ENDORSEMENT

---

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT

The following Condition is added to the COMMON POLICY CONDITIONS:

**Service of Suit**

In the event of our failure to pay any amount claimed to be due under the policy, at the request of the insured we will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.  It is further agreed that in any such action we will abide by the final decision of any such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the highest ranking government official or body with the authority to receive such service of process and bearing the title of "Commissioner," "Director," or "Superintendent" of Insurance (or other office specified by statute for receiving service of process) of the state or commonwealth of the court of competent jurisdiction.  If service of process is sent to us, it may be mailed to:

**Douglas Libby, CEO**

**Seneca Specialty Insurance Company**

**160 Water Street**

**New York, NY  10038**

---

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

 © Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

 © Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

© Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $    250 |
| Limit of Insurance – Building 1: | $  60,000 |
| Limit of Insurance – Building 2: | $  80,000 |
| Loss to Building 1: | $  60,100 |
| Loss to Building 2: | $  90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---|---|
| $  60,100 | |
| −     250 | |
| $  59,850 Loss Payable – Building 1 | |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

 © Insurance Services Office, Inc., 2011

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $   40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $     250 |
| | The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 © Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

 © Insurance Services Office, Inc., 2011

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

   **(1)** On or after the effective date of this Optional Coverage; and

   **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

   **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

   **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is: $ 100,000

The annual percentage increase is: 8%

The number of days since the beginning of the policy year (or last policy change) is: 146

The amount of increase is: $100,000 x .08 x 146 ÷ 365 = $ 3,200

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

   **(1)** Personal property of others;

   **(2)** Contents of a residence;

   **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

   Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

   **(1)** Until the lost or damaged property is actually repaired or replaced; and

   **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

   With respect to tenants' improvements and betterments, the following also apply:

   **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

   **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   **(1)** The Limit of Insurance applicable to the lost or damaged property;

   **(2)** The cost to replace the lost or damaged property with other property:

      **(a)** Of comparable material and quality; and

      **(b)** Used for the same purpose; or

   **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

   If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

 © Insurance Services Office, Inc., 2011

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

# SWORN STATEMENT IN PROOF OF LOSS

| | | |
|---|---|---|
| POLICY NO. SSP1801793 | | INS CLAIM NO. 14BBN060 |
| 9/10/2012 - 9/10/2013 | | Commercial Insurance Solutions Group |
| POLICY TERM | | AGENT |
| AMT OF BLDG COV AT TIME OF LOSS **$591,000.00** | ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME. | 3933 Elm Street AGENCY AT Dallas, TX 75226 |

TO  SENECA INSURANCE CO:

At time of loss, by above indicated policy of insurance, you insured the interest of

Behind Every Door, LLC / BED-Village Oaks, LLC; 3550 E Overton St; Dallas, TX 75216

against loss by Fire to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN  A  Fire _____ loss occurred about the hour of **Twelve** o'clock **PM.,**

on the **03** day of **February, 2014** . The cause of the said loss was:

Fire

OCCUPANCY  The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever:

Owner

INTEREST  No other person or persons had any interest therein or encumbrance thereon except:

Triumph Savings Bank, Jansen International

| | |
|---|---:|
| 1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is | $591,000.00 |
| 2. ACTUAL CASH VALUE of building structures | $365,076.93 |
| 3. ADD ACTUAL CASH VALUE OF CONTENTS of personal property insured | $0.00 |
| 4. ACTUAL CASH VALUE OF ALL PROPERTY | $365,076.93 |
| 5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents) | $157,717.45 |
| 6. LESS APPLICABLE DEPRECIATION | $35,254.49 |
| 7. ACTUAL CASH VALUE LOSS is | $122,462.96 |
| 8. LESS DEDUCTIBLES | $100,000.00 |
| 9. NET AMOUNT CLAIMED under above numbered policy is | $22,462.96 |

The said loss did not originate by any act, design or procurement on the part of your insured, nothing has been done by or with the privity or consent of your insured to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property saved has in any manner been concealed, and no attempt to deceive the said insurer as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over the insurer all rights, claims or interest  that he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or advanced.  He also hereby authorizes the insurer to sue any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who may be liable in damages to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

I declare under penalty of perjury that the information contained in the foregoing is true and correct to the best of my knowledge and belief.

Executed this  **5**  day of  **DEC** , 20 **14**

Signature _____
INSURED

Signature  BED-VILLAGE OAKS, LLC
INSURED

035

# SWORN STATEMENT IN PROOF OF LOSS

| | | |
|---|---|---|
| POLICY NO. | | INS CLAIM NO. 14BBN284 |
| 9/10/2012 - 9/10/2013 | | Commercial Insurance Solutions Group |
| POLICY TERM | | AGENT |
| $480,000.00 | | 3933 Elm Street |
| AMT OF BLDG COV AT TIME OF LOSS | ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME. | AGENCY AT Dallas, TX 75226 |

TO   SENECA INSURANCE CO:

At time of loss, by above indicated policy of insurance, you insured the interest of

**Behind Every Door, LLC / BED-Village Oaks, LLC; 3550 E Overton St; Dallas, TX 75216**

against loss by Fire to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN   A   **Fire**                                                             loss occurred about the hour of **Twelve** o'clock **PM.,**

on the **23**   day of   **February, 2014**   . The cause of the said loss was:

**Accidental Fire**

OCCUPANCY   The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever:

**Renter Primary residence**

INTEREST   No other person or persons had any interest therein or encumbrance thereon except:

**Behind Every Door, LLC. / BED- Village Oaks LLC.**

| | |
|---|---:|
| 1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is ........................................ | $480,000.00 |
| 2. ACTUAL CASH VALUE of building structures ............................................................................. | $365,076.93 |
| 3. ADD ACTUAL CASH VALUE OF CONTENTS of personal property insured ................................................ | $0.00 |
| 4. ACTUAL CASH VALUE OF ALL PROPERTY ............................................................................. | $365,076.93 |
| 5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents)........................................................ | $358,939.98 |
| 6. LESS APPLICABLE DEPRECIATION ..................................................................................... | $79,673.79 |
| 7. ACTUAL CASH VALUE LOSS is ......................................................................................... | $279,266.19 |
| 8. LESS DEDUCTIBLES ................................................................................................... | $100,000.00 |
| 9. NET AMOUNT CLAIMED under above numbered policy is ................................................................ | $179,266.19 |

The said loss did not originate by any act, design or procurement on the part of your insured, nothing has been done by or with the privity or consent of your insured to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property saved has in any manner been concealed, and no attempt to deceive the said insurer as to the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over the insurer all rights, claims or interest  that he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or advanced. He also hereby authorizes the insurer to sue any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who may be liable in damages to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

I declare under penalty of perjury that the information contained in the foregoing is true and correct to the best of my knowledge and belief.

Executed this   **5**   day of   **DEC**                   , 20 **14**

Signature   _[signature]_
                                    INSURED

Signature   **BED - VILLAGE OAKS, LLC**
                                    INSURED

036

## REINSTATEMENT OF AND FIRST AMENDMENT TO
## COMMERCIAL EARNEST MONEY CONTRACT

THIS REINSTATEMENT OF AND FIRST AMENDMENT TO COMMERCIAL EARNEST MONEY CONTRACT (this "Amendment") is made and entered into effective as of December 31, 2014, by and between BED-VILLAGE OAKS, LLC, a Texas limited liability company ("Seller"), and 326 COLONIAL APARTMENT COMPLEX, LLC, a Texas limited liability company ("Purchaser").

### RECITALS:

**A.**     Seller and Rajab Ali are parties to a Commercial Earnest Money Contract (the "Contract") dated November 6, 2014, pursuant to which Seller agreed to sell to Rajab Ali and Rajab Ali agreed to purchase from Seller the Village Oaks Apartments in Dallas, Dallas County, Texas, being more particularly described in the Contract (the "Property").

**B.**     Rajab Ali assigned his interest in the Contract to Purchaser.

**C.**     The Contract has been terminated.

**D.**     Seller and Purchaser desire to reinstate and amend the Contract as specifically provided in this Amendment.

**NOW, THEREFORE,** for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Purchaser agree that the Contract is hereby reinstated and amended as follows:

1.     Incorporation by Reference.  The foregoing recitals are true and correct and are incorporated by reference as though fully set forth herein.

2.     Defined Terms.    Capitalized terms used and not otherwise defined in this Amendment shall have the same meaning or meanings given to them in the Contract.

3.     Reinstatement.  Seller and Purchaser agree that the Contract is hereby reinstated.

4.     Purchase Price.  The Purchase Price shall be $6,395,000.00.  The Purchase Price shall be payable as follows:

(a)     As a cash down payment for the Property, Purchaser shall pay to Seller, at Closing, $2,528,457.87;

(b)     The balance of the Purchase Price, in the amount of $5,195,000.00, shall be evidenced by a wrap promissory note (the "Wrap Note"), which Wrap Note shall be payable to the order of Seller and executed and delivered to Seller by Purchaser at Closing.  The Wrap Note shall:

1

BED-60E Reinstate & 1st Amend to EM Contract (v5) #5864371

              (i)     bear interest at the rate of six percent (6%) per annum;

              (ii)    provide that accrued and unpaid interest thereon shall be due and payable monthly, the first installment of interest to be due and payable on the first day of February 2015, with a like installment of interest to be due and payable on the first day of each calendar month thereafter;

              (iii)   provide that the entire amount thereof then remaining unpaid, both principal and interest, shall be due and payable on or before six (6) months after the date of Closing;

              (iv)   provide that it may, at any time and from time to time be prepaid in whole or in part, without notice, penalty or fee;

              (v)    be secured by a vendor's lien retained and reserved on the Property in the Deed and to be additionally secured by a second lien Deed of Trust (the "Wrap Deed of Trust") of even date therewith from Purchaser to a Trustee to be designated by Seller;

              (vi)   the conveyance contemplated by the Contract shall be made by Seller and accepted by Purchaser subject to the unpaid balance due and owing as of the date of Closing on that certain Promissory Note (the "Triumph Note) dated August 31, 2011, in the original principal amount of $3,000,000.00, executed by Seller, payable to the order of Triumph Savings Bank, SSB ("Triumph"), and secured by a Deed of Trust (the "Triumph Deed of Trust") dated the same date as the Triumph Note, executed by Seller to Clark E. Enright, Trustee, recorded in County Clerk's File No. 201100233605 of the Real Property Records of Dallas County, Texas;

              (vii)  the Note will be a subordinate and inferior "wrap around" note. A portion of the unpaid balance of the Note will represent the unpaid principal balance and accrued interest on the Triumph Note. Purchaser will not assume all or any portion of the indebtedness evidenced by the Triumph Note; and

(viii)   Seller agrees to continue to be obligated to pay the Triumph Note in accordance with its terms, provided Purchaser is not in default under the Wrap Note or the Wrap Deed of Trust.

(c)   In addition to the Purchase Price to be paid to Seller at Closing, Purchaser shall deposit $62,000.00 into the Replacement Reserve Account held by Triumph in connection with the loan evidenced by the Triumph Note and in accordance with the Escrow Agreement executed by Triumph, Seller and Purchaser at Closing. Purchaser agrees to utilize all of the Improvement Escrow Funds (defined below) prior to utilizing any of the funds in the Replacement Reserve Account held by Triumph.

(d)   At Closing, Purchaser shall receive a credit against the Purchase Price, in the amount of $61,000.00, in accordance with Section 14 of this Amendment.

5.   Earnest Money Deposit.  No Earnest Money Deposit has been deposited by Purchaser with either the Title Company or Seller in connection with the Contract.

6.   Closing Date.  The Closing Date shall be December 31, 2014.

7.   Waivers.  Purchaser hereby waives its right to terminate the Contract pursuant to Sections 4 and 7.3 of the Contract and Section 7 of Addendum 1 of the Contract.

8.   Loan.  Section 8 of Addendum 1 to the Contract is hereby deleted.

9.   Expenses.  Purchaser shall be responsible for paying the legal fees (estimated to be $6,000) incurred by Triumph in connection with transactions contemplated by this Amendment.

10.   Escrow Agreement.  Within thirty (30) days after Closing, Seller, Purchaser and Triumph shall enter into an escrow agreement (the "Escrow Agreement"), reasonably acceptable to Triumph, which shall provide among other things, as follows:

(i)   At Closing, Purchaser shall deliver $57,847.00 (the "Tax Escrow Funds") to Triumph;

(ii)   At Closing, Purchaser shall deliver $155,850.00 (the "Interest Escrow Funds") to Triumph;

(iii)   At Closing, Purchaser shall deliver $518,303.00 (the "Improvement Escrow Funds" and together with the Tax Escrow Funds and the Interest Escrow Funds, the "Escrow Funds") to Triumph;

(iv)    Regarding the Tax Escrow Funds, the Escrow Agreement shall provide:

(1)    in the event Purchaser pays the Wrap Note in accordance with its terms and provisions, and Seller pays the Triumph Note in accordance with the terms and provisions, Triumph is irrevocably instructed to deliver the Tax Escrow Funds to Purchaser.

(2)    in the event Purchaser fails to pay the Wrap Note or perform its obligation under the Wrap Deed of Trust in accordance with its terms and provisions, Triumph is irrevocably instructed to hold the Tax Escrow Funds for the benefit of Seller.

(v)    Regarding the Interest Escrow Funds, the Escrow Agreement shall provide:

(1)    that Triumph is irrevocably instructed to apply the Interest Escrow Funds to the monthly payment of interest due to Triumph commencing on February 15, 2015, and continuing on the 15th day of each month thereafter until the Triumph Note has been fully paid or the Interest Escrow Funds have been fully depleted, whichever is the earlier.

(2)    at such time as the Wrap Note and the Triumph Note have been fully paid, Triumph is irrevocably instructed to deliver any remaining Interest Escrow Funds to Purchaser.

(vi)    Regarding the Improvement Escrow Funds, the Escrow Agreement shall provide:

(1)    that Purchaser shall agree to perform certain improvements (the "Improvements") to the Property after Closing. A list of the Improvements is attached to this Amendment as Exhibit "A."

(2)    Purchaser shall commence construction of the Improvements within thirty (30) days after the date of Closing.

(3)    portions of the Improvement Escrow Funds shall be released to contractors selected by Purchaser upon a written request (a "Request") submitted to Triumph and approved in writing by Seller, which approval shall not be unreasonably withheld or delayed. Each Request shall (i) designate the amount to be paid and the party or parties to be paid, (ii) describe the work performed, (iii) be certified by Purchaser as true and correct, and

4

(iv) be accompanied by invoices and lien waivers from the contractors to receive any portion of the Improvement Escrow Funds.

(4)    within fifteen (15) days of receiving a Request, Triumph shall make disbursements from the Improvement Escrow Funds as provided in the Request approved by Seller and Triumph, which approvals shall not be unreasonably withheld or delayed.

(5)    at such time as the Wrap Note and the Triumph Note have been fully paid, any portion of the Improvement Escrow Funds held by Triumph shall be returned to Purchaser.

(6)    in the event, Purchaser defaults in its obligations under the Wrap Note or the Wrap Deed of Trust, Triumph is irrevocably instructed to hold the Improvement Escrow Funds then held by Triumph for the benefit of Seller.

11.    Extensions.

(a)    Provided Purchaser is not in default under the Wrap Note or Wrap Deed of Trust, Purchaser may elect to extend (the "First Extension Right") the maturity date of the Wrap Note by up to ninety (90) days by, on or before ten (10) days prior to the maturity date of the Wrap Note, (i) reducing the outstanding principal balance of the Triumph Note (and thereby reducing the principal of the Wrap Note) by $100,000.00, (ii) depositing an additional $28,924.00 with Triumph to be held in accordance with the Escrow Agreement as additional Tax Escrow Funds, (iii) depositing an additional $77,925.00 with Triumph to be held in accordance with the Escrow Agreement as an additional Interest Escrow Funds, (iv) depositing an additional $31,000.00 into the Replacement Reserve Account held by Triumph in connection with the loan evidenced by the Triumph Note, and (v) depositing $65,000.00 in an insurance reserve account held by Triumph and agreeing to deposit an additional $10,000.00 into the insurance reserve account on the first (1st) day of each month thereafter until the Wrap Note and the Triumph Note are fully paid.

(b)    Provided Purchaser is not in default under the Wrap Note or Wrap Deed of Trust and provided Purchaser has properly exercised the First Extension Right, Purchaser may elect to extend (the "Second Extension Right") the maturity date of the Wrap Note by up to an additional ninety (90) days by, on or before ten (10) days prior to the maturity date of the Wrap Note, as extended pursuant to the First Extension Right, (i) reducing the outstanding principal balance of the Triumph Note (and thereby reducing the principal of the Wrap Note) by $100,000.00, (ii) depositing an additional $28,924.00 with Triumph to be held in accordance with the Escrow Agreement as additional Tax Escrow Funds, (iii) depositing an additional $77,925.00 with Triumph to be held in accordance

5

BED-60E Reinstate & 1st Amend to EM Contract (v5) #5864371

with the Escrow Agreement as an additional Interest Escrow Funds, and (iv) depositing an additional $31,000.00 into the Replacement Reserve Account held by Triumph in connection with the loan evidenced by the Triumph Note.

12.     Services Agreement.  A copy of the approved Services Agreement to be executed at Closing is attached to this Amendment as Exhibit "B" and made a part hereof for all purposes.

13.     ROFR.  A copy of the approved Right of First Refusal Agreement to be executed at Closing is attached to this Amendment as Exhibit "C" and made a part hereof for all purposes.

14.     Damage to Buildings 18 and 43.  At Closing, Seller shall (i) assign to Purchaser, without representation or warranty, all of its right, title and interest in and to the insurance proceeds, in the maximum amount of $316,657.00, as set forth in the Sworn Statements of Proof of Loss attached to this Amendment as Exhibit "D" and made a part hereof for all purposes, due to Seller as a result of the damage caused by fire to Buildings 18 and 43 and (ii) provide Purchaser with a $60,000.00 credit against the Purchase Price at Closing.  Upon Closing, Seller shall have no further obligation regarding the repair of Buildings 18 and 43, and Purchaser shall be solely responsible for the repair to Buildings 18 and 43; provided, however, Seller agrees to cooperate with Purchaser and Purchaser's agents in pursuing such claim.  Purchaser agrees to promptly repair the damage to the Property described in the Sworn Statements of Proof of Loss on or before _____, 2015, and use all of the insurance proceeds and credit described above in connection with such repairs.

15.     Pump.  At Closing, Purchaser shall pay Seller $10,463.00 to reimburse Seller for a portion of the costs to replace the pump.

16.     No Further Amendments.  Except as expressly set forth in this Amendment, the Contract has not been modified or amended.

17.     Effectiveness of Amendment.  The Contract, as amended by this Amendment, is in full force and effect and the parties hereto ratify, confirm and approve in all respects the Contract, as amended by this Amendment. This Amendment cannot be modified or amended, except in writing executed by Seller and Purchaser.

18.     No Oral Agreements.  There are no oral or written agreements between the parties concerning the transactions contemplated by the Contract, except as set forth in the Contract and this Amendment.

19.     Counterparts.  This Amendment may be executed in multiple counterparts, each of which shall be deemed an original, and all of such counterparts shall constitute one and the same instrument, with the same effect as if the signatures were upon the same instrument.

20.    Telecopied/Electronic Mail Signatures.  The parties may sign and transmit this Amendment by facsimile or other electronic means, and each party's signature on a facsimile or other electronic transmission of this Amendment (i) shall be considered an original signature with the same binding effect as an original signature on this Amendment and (ii) shall be conclusive proof, admissible in judicial proceedings, of such party's execution of this Amendment.

21.    Controlling Agreement.  In the event of a conflict between the terms and provisions of this Amendment and the terms and provisions of the Contract, the terms and provisions of this Amendment shall control.

{signature page follows}

043

This Amendment is duly executed by the parties hereto as of the date set forth above.

**SELLER:**

BED-VILLAGE OAKS, LLC,
a Texas limited liability company

By:     BEHIND EVERY DOOR, LLC,
        a Texas limited liability company - Manager

        By:     FACILITIES CARE MANAGEMENT, LLC,
                a Texas limited liability company – Manager

                By:     _____
                        Keith Waggoner, Manager

**PURCHASER:**

326 COLONIAL APARTMENT COMPLEX, LLC,
a Texas limited liability company

By:     _____
        Ali Gowani, Manager

By:     _____
        Dr. Mohammad Patel, Manager

By:     _____
        Nasarullah Aziz, Manager

044

This Amendment is duly executed by the parties hereto as of the date set forth above.

**SELLER:**

BED-VILLAGE OAKS, LLC,
a Texas limited liability company

By:     BEHIND EVERY DOOR, LLC,
            a Texas limited liability company - Manager

      By:     FACILITIES CARE MANAGEMENT, LLC,
            a Texas limited liability company – Manager

            By:     _____
                  Keith Waggoner, Manager

**PURCHASER:**

326 COLONIAL APARTMENT COMPLEX, LLC,
a Texas limited liability company

By:     _____
      Ali Gowani, Manager

By:     _____
      Dr. Mohammad Patel, Manager

By:     _____
      Nasarullah Aziz, Manager

# EXHIBIT "A"

## (Improvements)

| Capex Initiative | Count | Units | Cost | Total Cost |
|---|---|---|---|---|
| Units Rehab | | 191 | 500.00 | $95,500 |
| Units Rehab (appliances) | | 60 | 1,000.00 | $60,000 |
| Blower | | 50 | 350.00 | $17,500 |
| Chiller Plant | | | | $200,000 |
| Perimeter Fence | | 1400 | 100.00 | $140,000 |
| Cameras | | | | $10,000 |
| Energy Efficiency (exteriors lights) | 40 | 2 | 50.00 | $4,000 |
| | | | | $527,000 |

## EXHIBIT "B"

### SERVICES AGREEMENT

This Services Agreement (the "Agreement") is made and entered into effective as of the _____ day of _____, 20___ (the "Effective Date") by and between 326 COLONIAL APARTMENT COMPLEX, LLC, a Texas limited liability company (the "Owner"), and BEHIND EVERY DOOR MINISTRIES, INC., a Texas non-profit corporation (the "Ministries").

WHEREAS, Owner is the owner of the Village Oaks Apartments in Dallas, Dallas County, Texas (the "Property"), and desires to engage Ministries to perform certain services for the benefit of Owner at the Property; and

WHEREAS, Ministries is willing to perform the services described in this Agreement; and

WHEREAS, Owner and Ministries desire to set forth the terms and conditions of their agreement.

NOW, THEREFORE, for and in consideration of the mutual covenants and agreement in this Agreement, the receipt and sufficiency of which are hereby acknowledged, Owner and Ministries agree as follows:

1.    Term.

(a)    The term (the "Term") of this Agreement shall be a period of two (2) years commencing on the Effective Date.

(b)    Notwithstanding Section 1(a) above, upon the sale of the Property, this Agreement shall automatically terminate effective as of the date of the sale and any fees due to Ministries shall be prorated effective as of such date.

(c)    This Agreement shall automatically renew for one year at the end of the initial term, and each year thereafter, provided that neither party has exercised its right to termination by providing the other with thirty (30) days written notice of that intent.

2.    Ministries Duties.

(a)    Ministries will provide community programs, activities, and events for the benefit of the residents of the Property and surrounding neighborhood, including year-round programs and holiday events.

1

(b)     Ministries will occupy space in the Community Center, as shown on Exhibit A (hereinafter referred to as the "Community Center") and operate the Community Center on the Property for the benefit of the residents of the Property.

(c)     Ministries will attempt to enter into relationships with local churches, organizations, and other groups to benefit the Property and the residents of the Property.

(d)     Ministries will periodically advise the residents on the list of events, activities, programs, and community news.

(e)     Ministries will attempt to meet residents and monitor the Property.

(f)     Under no circumstances will Ministries be obligated to advance monies on behalf of Owner.

(g)     Ministries will establish written operating procedures and protocols for interaction between staff, volunteers and the residents. All Ministries' staff and volunteers will be properly screened.

(h)     Ministries will obtain releases from the responsible party for all minors before they are allowed to participate in any programs.

(i)     Ministries will obtain liability insurance in the amount of $1,000,000 per occurrence, $2,000,000 aggregate with Owner and the Property manager named as additional insured.

(j)     Ministries will, at Owner's request, meet monthly to discuss upcoming programs, activities, and attendance at the programs at the Community Center.

(k)     Ministries will provide a monthly report for Owner including services performed, metrics on participation levels, and expenses.

3.     <u>Owner's Duties</u>.

(a)     Commencing on the Effective Date, and continuing until a stand-alone community center is constructed on the Property, Ministries will have the exclusive use of the Community Center by leasing said Community Center for $10 per month. Ministries shall be responsible for the upkeep of the Community Center and responsible for any damages to the Community Center caused by its staff, volunteers and invited guests. Owner's property insurance will not cover the personal property of Ministries located in the Community Center.

2

(b)     In consideration of the services rendered by Ministries, Owner agrees to pay Ministries a monthly fee (the "Monthly Fee") calculated as follows:

(i)  For calendar months during which the occupancy level of rentable apartment units in the Property is ninety percent (90%) or greater, Ministries will receive a monthly fee equal Five Thousand Dollars, $5,000.

(ii)  For calendar months during which the occupancy level of rentable apartment units in the Property is at least eighty percent (80%) but less than ninety percent (90%), Ministries will receive a monthly fee equal to Four Thousand Dollars, $4,000.

(iii)  For calendar months during which the occupancy level of rentable apartment units in the Property is at least seventy percent (70%) but less than eighty percent (80%), Ministries will receive a monthly fee equal to Three Thousand Dollars, $3,000.

(iv)  For calendar months during which the occupancy level of rentable apartment units in the Property is at least sixty percent (60%) but less than seventy percent (70%), Ministries will receive a monthly fee equal to Two Thousand Five Hundred Dollars, $2,500.

(v)  The Monthly Fee shall be paid on the 15th day of the following month.

(vi)  Occupancy Level shall be determined by reference to the Rent Roll Report for the last day of the preceding month.   For example the occupancy level for November 2014, shall be shown in the October 31, 2014 Rent Roll Report.

(c)     For any new leases procured for Village Oaks directly by Ministries, at lease terms acceptable to Owner, then Owner will pay Ministries a one-time fee of $50/unit.

4.     Default.

(a)     In the event Owner defaults in its obligations under this Agreement with respect to making a payment due to Ministries, and the default remains uncured for ten (10) days after written notice by Ministries to Owner, or if Owner defaults in the performance of any other obligation hereunder and the default remains uncured for thirty (30) days after written notice by Ministries to Owner, Ministries shall be entitled, among its other remedies, to terminate this Agreement

without further liability by giving written notice to Owner. All fees earned prior to such termination, including prorated fees for any partial month during which the termination occurs, shall be paid in full by Owner notwithstanding the termination.

(b)     In the event Ministries defaults in any of its obligations under this Agreement, and fails to cure the default within thirty (30) days after receipt of written notice from Owner identifying the default with reasonable particularity, Owner may terminate this Agreement, without further liability, by giving written notice to Ministries; provided, however, that if Ministries promptly commences to cure the default after receipt of the written notice and proceeds diligently and continuously to prosecute the cure to completion, Ministries shall have a longer period (beyond 30 days) as is reasonably required to cure the default.

5.     Miscellaneous.

(a)     This Agreement shall be construed under and in accordance with the laws of the State of Texas.

(b)     This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(c)     Ministries shall be deemed to be an independent contractor of Owner. Nothing contained in this Agreement shall be regarded as creating any relationship, including without limitation, employer-employee, joint venture, partner, shareholder, or the like between the parties other than as set forth in this Agreement.

(d)     In case any one or more of the provisions contained in this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable, it shall not affect any other provisions of this Agreement, and this Agreement shall be construed as if the invalid, illegal or unenforceable provision had never been contained in this Agreement.

(e)     This Agreement contains the sole and only agreement of the parties hereto, and it supersedes any prior understanding or agreements, whether written or oral, between the parties respecting the subject matter set forth herein.

(f)     This Agreement and all other copies of this Agreement, insofar as they relate to the rights, duties, and remedies of the parties, shall be deemed to be one Agreement. This Agreement may be executed concurrently in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

4

(g)     Notices or other communications required or permitted to be given hereunder shall be in writing, signed by or on behalf of the person making or giving the same, and either hand delivered or sent certified or registered mail, return receipt requested and shall be deemed given upon the first to occur of (i) actual receipt at the specified notice address of the party, or (ii) two (2) postal business days after deposit in the United States mail, postage prepaid, certified or registered, return receipt requested, addressed to the person to whom such notice is to be made or given, at their respective addresses:

|  |  |
|---|---|
| If to Owner: | 326 Colonial Apartments Complex, LLC<br>3550 E. Overton Rd.<br>Dallas, Texas 75216 |
| If to Ministries: | Behind Every Door Ministries, Inc.<br>14860 Montfort, Suite 140<br>Dallas, Texas  75254 |

or in any case, at such other address as shall have been set forth in a notice sent pursuant to the provisions of this paragraph. Each party may change its address for notice herein by giving written notice thereof to the other pursuant to this paragraph.

EXECUTED as of the Effective Date.

OWNER:

326 COLONIAL APARTMENTS COMPLEX, LLC.
a Texas limited liability company

By:     _____
        Name: _____
        Title: _____

MINISTRIES:

BEHIND EVERY DOOR MINISTRIES, INC.,
a Texas non-profit corporation

By:     _____
        Will Dowell, Executive Director

5

## EXHIBIT A
### (to Services Agreement)

"COMMUNITY CENTER" SPACE AT VILLAGE OAKS APARTMENTS

The Community Center will include the front offices, and the Life Center gymnasium, as shown on Exhibit A, Page 2.  Additionally, Ministries will have the right to organize and host activities in the outdoor common areas of the Property, with reasonable notice to Manager.

6

## EXHIBIT "C"

### (Right of First Refusal Agreement)

AFTER RECORDING RETURN TO:
Tim Hagen
Glast, Phillips & Murray, P.C.
14801 Quorum Drive, Suite 500
Dallas, Texas 75254

## RIGHT OF FIRST REFUSAL AGREEMENT

THIS RIGHT OF FIRST REFUSAL AGREEMENT (this "Agreement") is made and entered into as of December _____, 2014, by and between 326 COLONIAL APARTMENTS COMPLEX, LLC, a Texas limited liability company ("Colonial"), and BEHIND EVERY DOOR MINISTRIES, INC., a Texas non-profit corporation ("BED").

### WITNESSETH:

WHEREAS, by Special Warranty Deed dated of even date herewith, BED conveyed to Colonial, approximately 29.158 acres located in Dallas, Collin County, Texas, being described on Exhibit "A" attached hereto and made a part hereof for all purposes (the "ROFR Property"); and

WHEREAS, as a part of the consideration for the purchase by Colonial of the Property, Colonial is willing to grant to BED the right of first refusal to purchase the ROFR Property on the terms and conditions herein set forth.

NOW, THEREFORE, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Colonial and BED agree as follows:

1.      Colonial hereby grants to BED, on the terms and conditions herein set forth, the right of first refusal to purchase the ROFR Property.

2.      Colonial shall not sell, assign, transfer or otherwise convey all or any part of the ROFR Property without first complying with the terms and provisions of this Agreement.

3.      In the event Colonial receives a bona fide written contract (the "Offer Contract") from an unrelated entity for the purchase of all or any part of the ROFR Property which Colonial is willing to accept, Colonial, prior to executing the Offer Contract, will notify BED, in writing, of the receipt of the Offer Contract and will include with the notice a copy of the Offer Contract executed by the offering party.

1

4.     Within fifteen (15) days after the date of receipt of the written notice and a copy of the Offer Contract, BED may submit to Colonial a contract (the "ROFR Contract") executed by BED containing the same terms and conditions as the Offer Contract, except the name of the purchaser will be changed to BED and any reference to the payment of a fee by the purchaser to a real estate broker shall be deleted. If BED fails to close under the terms of the ROFR Contract, then the right of first refusal described in this Agreement shall terminate.

5.     In the event Colonial has not received the ROFR Contract within the fifteen (15) day period, BED's right of first refusal will terminate as to the portion of the ROFR Property made the subject of the Offer Contract, and Colonial may execute the Offer Contract.

6.     In the event the purchaser under the Offer Contract does not consummate the purchase of the ROFR Property made the subject of the Offer Contract, in accordance with the terms and conditions of the Offer Contract within the greater of (1) sixty (60) days after the date of BED's receipt of the Offer Contract or (2) thirty (30) days after the scheduled closing date under the Offer Contract, Colonial will give notice to BED, in writing, of such event and the right of first refusal granted to BED will be reinstated as to the ROFR Property made the subject of the Offer Contract. In the event the ROFR Property made the subject of the Offer Contract is sold by Colonial in accordance with the terms and conditions of the Offer Contract, BED's right of first refusal to purchase the ROFR Property made the subject of the Offer Contract shall terminate and be of no further force or effect. At such time as this Agreement has terminated or is no longer in effect, BED shall execute a release or similar document upon the request of Colonial.

7.     In the event Colonial receives from BED the ROFR Contract within the fifteen (15) day period, Colonial will be obligated to (i) execute the ROFR Contract and deliver a fully executed copy of the ROFR Contract to BED, within five (5) days of receipt, and (ii) sell the ROFR Property made the subject of the Offer Contract in accordance with the terms and conditions of the ROFR Contract.

8.     This Agreement shall run with the ROFR Property and shall be binding upon and inure to the benefit of Colonial, BED and their successors and assigns.

9.     Unless sooner terminated as provided herein, this Agreement shall terminate and be of no further force or effect on the date five (5) years after the date of this Agreement.

10.     If Colonial fails to convey the ROFR Property to BED as required by this Agreement, Colonial shall be in default hereunder and BED shall have the right to exercise any and all rights and remedies available to BED at law or in equity, including, but not limited to, the right to enforce specific performance.

11.     In the event that any litigation arises hereunder, it is specifically stipulated that the prevailing party in any litigation between the parties shall be entitled to recover, as a part of its judgment, reasonable attorneys' fees and costs of suit.

2

12.    The provisions of this Agreement may be modified or amended only with the consent of Colonial and BED by amendment, executed, acknowledged, and recorded in the Real Property Records of Dallas County, Texas.

13.    Any notice or communication required or permitted hereunder shall be given in writing, sent by (a) personal delivery, or (b) expedited delivery service with proof of delivery, (c) United States mail, postage prepaid, registered or certified mail, or (d) facsimile, addressed to the appropriate party of its address set forth on the signature page of this Agreement or to such other address or to the attention of such other person as hereinafter shall be designated in writing by the applicable party sent in accordance herewith.  Any such notice or communication shall be deemed to have been given, whether actually received or not, when sent or dispatched in the manner provided herein.  Either party hereto may change its address or facsimile number for the receipt of notice by giving notice to the other party of such address in accordance with the terms hereof.  Such new address will be effective upon the giving of such notice.

14.    This Agreement constitutes the entire understanding and agreement between the parties hereto regarding the matters set forth herein and supersedes all other, prior written or oral understandings and agreements between Colonial and BED with respect to such matters.

15.    If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, then the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and which shall be legal, valid and enforceable.

16.    This Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of Texas.

17.    This Agreement may be executed in multiple counterparts, all of which shall be deemed one and the same document.

{signature page follows}

3

EXECUTED as of the date set forth above.

**COLONIAL:**

326 COLONIAL APARTMENTS COMPLEX, LLC,
a Texas limited liability company

By:  _____
       Name: _____
       Title:  Manager

**Address:**

3536 Eisenhower Street
Carrollton, Texas 75007
Fax:  214/317-4900

**BED:**

BEHIND EVERY DOOR MINISTRIES, INC.,
a Texas non-profit corporation

By:  _____
       Name: _____
       Title: _____

**Address:**

14860 Montfort Drive, Suite 140
Dallas, Texas  75254
Attention:  Keith Waggoner
Fax:  972/331-4776

4

## ACKNOWLEDGMENTS

STATE OF TEXAS      §
                                      §

COUNTY OF DALLAS     §

       This instrument was acknowledged before me on the _____ day of December, 2014, by _____, Manager of 326 COLONIAL APARTMENTS COMPLEX, LLC, a Texas limited liability company, on behalf of said company.

_____
Notary Public, State of Texas

STATE OF TEXAS      §
                                        §

COUNTY OF DALLAS     §

       This instrument was acknowledged before me on this _____ day of December, 2014, by _____ who is the _____ of BEHIND EVERY DOOR MINISTRIES, INC., a Texas non-profit corporation, on behalf of said corporation.

_____
Notary Public, State of Texas

5

**<u>EXHIBIT "A"</u>**
**(to Right of First Refusal Agreement)**

**(Property)**

6

## EXHIBIT "D"

**(Sworn Statements in Proof of Loss)**

[SEE ATTACHED]

SSP1801793
POLICY NO.
9/10/2012  -  9/10/2013

# SWORN STATEMENT IN PROOF OF LOSS

14BBN060
INS CLAIM NO.
Commercial Insurance Solutions Group

POLICY TERM

$591,000.00

AMT OF BLDG COV AT TIME OF LOSS

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

AGENT

3933 Elm Street

AGENCY AT

Dallas, TX 75226

TO  SENECA INSURANCE CO:

At time of loss, by above indicated policy of insurance, you insured the interest of

**Behind Every Door, LLC / BED-Village Oaks, LLC; 3550 E Overton St; Dallas, TX 75216**

against loss by Fire to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN   A   Fire _____ loss occurred about the hour of Twelve o'clock PM.,

on the  03  day of February, 2014 . The cause of the said loss was:

Fire

OCCUPANCY   The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever:

Owner

INTEREST   No other person or persons had any interest therein or encumbrance thereon except:

**Triumph Savings Bank, Jansen International**

| | |
|---|---:|
| 1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is ........................................... | $591,000.00 |
| 2. ACTUAL CASH VALUE of building structures ........................................................................................... | $365,076.93 |
| 3. ADD ACTUAL CASH VALUE OF CONTENTS of personal property insured ........................................................ | $0.00 |
| 4. ACTUAL CASH VALUE OF ALL PROPERTY ............................................................................................ | $365,076.93 |
| 5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents)............................................................ | $157,717.45 |
| 6. LESS APPLICABLE DEPRECIATION ...................................................................................................... | $35,254.49 |
| 7. ACTUAL CASH VALUE LOSS is ............................................................................................................ | $122,462.96 |
| 8. LESS DEDUCTIBLES ........................................................................................................................... | $100,000.00 |
| 9. NET AMOUNT CLAIMED under above numbered policy is ........................................................................... | $22,462.96 |

The said loss did not originate by any act, design or procurement on the part of your insured, nothing has been done by or with the privity or consent of your insured to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property saved has in any manner been concealed, and no attempt to deceive the said insurer as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over the insurer all rights, claims or interest  that he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or advanced.  He also hereby authorizes the insurer to sue any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who may be liable in damages to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

I declare under penalty of perjury that the information contained in the foregoing is true and correct to the best of my knowledge and belief.

Executed this  5  day of  DEC , 20 14

Signature _____
INSURED

Signature  BED-VILLAGE OAKS, LLC
INSURED

060

SSP1801793

POLICY NO.
9/10/2012  -  9/10/2013

POLICY TERM
$480,000.00

AMT OF BLDG COV AT TIME OF
LOSS

# SWORN STATEMENT IN
# PROOF OF LOSS

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO
DEFRAUD AN INSURANCE COMPANY OR OTHER
PERSON FILES A STATEMENT OF CLAIM CONTAINING
ANY MATERIALLY FALSE INFORMATION, OR
CONCEALS FOR THE PURPOSE OF MISLEADING,
INFORMATION CONCERNING ANY FACT MATERIAL
THERETO, COMMITS A FRAUDULENT INSURANCE ACT,
WHICH IS A CRIME.

14BBN284

INS CLAIM NO.
Commercial Insurance Solutions Group

AGENT

3933 Elm Street

AGENCY AT
Dallas, TX 75226

TO  SENECA INSURANCE CO:

At time of loss, by above indicated policy of insurance, you insured the interest of

Behind Every Door, LLC / BED-Village Oaks, LLC; 3550 E Overton St; Dallas, TX 75216

against loss by Fire to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and
assignments attached thereto.

TIME AND ORIGIN   A   Fire _____ loss occurred about the hour of Twelve  o'clock  PM.,

on the  23   day of  February, 2014   . The cause of the said loss was:

Accidential Fire

OCCUPANCY   The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other
purpose whatever:

Renter Primary residence

INTEREST   No other person or persons had any interest therein or encumbrance thereon except:

Behind Every Door, LLC. / BED- Village Oaks LLC.

| | |
|---|---|
| 1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is ........................................ | $480,000.00 |
| 2. ACTUAL CASH VALUE of building structures ............................................................................................... | $365,076.93 |
| 3. ADD ACTUAL CASH VALUE OF CONTENTS of personal property insured ............................................................. | $0.00 |
| 4. ACTUAL CASH VALUE OF ALL PROPERTY ................................................................................................. | $365,076.93 |
| 5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents)............................................................... | $358,939.98 |
| 6. LESS APPLICABLE DEPRECIATION .......................................................................................................... | $79,673.79 |
| 7. ACTUAL CASH VALUE LOSS is ............................................................................................................... | $279,266.19 |
| 8. LESS DEDUCTIBLES ............................................................................................................................ | $100,000.00 |
| 9. NET AMOUNT CLAIMED under above numbered policy is ............................................................................. | $179,266.19 |

The said loss did not originate by any act, design or procurement on the part of your insured, nothing has been done by or with the privity or consent of
your insured to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were
destroyed or damaged at the time of said loss, no property saved has in any manner been concealed, and no attempt to deceive the said insurer as to
the extent of said loss, has in any manner been made.  Any other information that may be required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over the insurer all rights,
claims or interest  that he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or
advanced.  He also hereby authorizes the insurer to sue any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who
may be liable in damages to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

I declare under penalty of perjury that the information contained in the foregoing is true and correct to the best of my knowledge and belief.

Executed this   5   day of   DEC   , 20 14

Signature   _____
INSURED

Signature   BED - VILLAGE OAKS, LLC
INSURED